# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA C. SHEPPARD, | ) | CASE NO. 5:18-cv-2223 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| THE UNIVERSITY OF AKRON, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion to dismiss filed by defendants the University of Akron ("UA"), Lee Gill, Federia Nicholson, and Candace Campbell-Jackson. (Doc. No. 10 ["MTD"].) Pro se plaintiff Victoria C. Sheppard ("Sheppard") filed her opposition to defendants' motion to dismiss in the form of a motion for summary judgment (Doc. No. 18 ["MSJ"]), and defendants filed a reply in support of their motion to dismiss (Doc. No. 19 ["Reply"]). For the reasons discussed herein, defendants' motion to dismiss is GRANTED and plaintiff's motion for summary judgment is DENIED.

## I. BACKGROUND

On September 27, 2018, Sheppard filed her complaint labeled "Suit in Equity and Fairness" against UA and several former UA employees: Lee Gill, former Vice President of Diversity and Inclusion; Federia Nicholson, former Director of Multi-Cultural Affairs; and Candace Campbell-Jackson, former Vice President and Chief of Staff ("UA Officials"). (Doc. No 1, Complaint ["Compl."].) On October 29, 2018, Sheppard paid the filing fee.[1]

---

[1] Because Sheppard paid the filing fee on October 29, 2018, her September 27, 2018 motion to proceed in forma pauperis (Doc. No. 2) is DENIED as moot.

Sheppard's complaint pertains to an event at UA known as "The Black Male Summit" and Sheppard's efforts to obtain employment at UA in connection with that event. Sheppard alleges that she came up with the "idea for a multi-day event/program to bring together community leaders and intellectuals to tackle the enormous plight of young African American males." (*Id.* at 5.[2]) Sheppard alleges that she presented her idea to Akron City Council President Marco Sommerville ("Sommerville") in 2004 and told him she was going to call her program "The Black Male Summit since we live in Summit County." (*Id.*) Sommerville allegedly agreed to provide funding for the program, and Sheppard asked Sommerville to give her time to request permission to present her program on campus at AU where she was then attending graduate school. (*Id.*) Sheppard alleges that she subsequently met with the "then Director, [of the] Office of Multi-Cultural Development" at UA and presented her program, stating she was "giving" the program to UA in order to "create a job for [herself]" and that she wanted to work at UA. (*Id.*) She alleges she "eagerly left her telephone number and was told she would hear from officials as soon as possible." (*Id.*)

Sheppard alleges that she became ill and had to drop out of classes at UA. (*Id.*) Sheppard alleged that, "[u]pon returning, [she] noted that [UA] was announcing their new program: The Black Male Summit." (*Id.*) Sheppard attended this program in 2008 and told defendant Nicholson "that the program name and idea belonged to her," to which Nicholson allegedly responded: "It doesn't matter whose idea it was! It was something that needed to be done!" (*Id.*)

Sheppard alleges that "[e]ach year" she met with and spoke with a number of UA Officials, including defendant Gill, "asking for assistance in reclaiming her event/program[.]" (*Id.*) Sheppard

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

2

alleges that each year "officials would assure her[] they would do something, bring her on board, recognize her as the creator and involve her participating in executing the program." (*Id*. at 5–6.) Defendant Gill allegedly told her, "I'm going to contact the incoming Director Jolene Lane, and put in a good word for you. I don't have any problem recognizing/involving you. I know you created this event." (*Id.* at 6.)

Sheppard, however, was never offered employment at UA, or involvement in The Black Male Summit. She alleges that defendant Campbell-Jackson told her in 2012 that no one wanted to hire Sheppard because they would have to pay her more with a doctorate. (*Id*. at 10.)

Sheppard contends she has been inequitably and unfairly treated by UA and has suffered serious health problems as a result. (*Id*. at 14.) Her complaint alleges claims against the defendants for (1) trademark infringement, (2) discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), (3) discrimination under the Age Discrimination in Employment Act ("ADEA"), and (4) discrimination under Ohio's antidiscrimination statute (Chapter 4112 of the Ohio Revised Code). (*Id.* at 14–16.) For relief, she seeks "$377 million in damages for the 11 years of unemployment, back pay, hurt, pain, suffering and undue stress created by the intentional mistreatment by officials at [UA]." (*Id*. at 17.)

Defendants filed their motion to dismiss Sheppard's complaint pursuant to Fed. R. of Civ. P. 12(b)(1) and 12(b)(6), contending that this Court lacks subject-matter jurisdiction over Sheppard's trademark infringement, ADEA, and state-law discrimination claims on the basis of sovereign immunity, and lacks jurisdiction over Sheppard's Title VII and ADEA claims because Sheppard has failed to exhaust administrative remedies. (MTD at 127.) Defendants also contend that Sheppard's claims under Title VII, the ADEA, and Ohio's antidiscrimination statute are all

3

barred by the applicable statute of limitations. (*Id.*) Further, defendants contend that Sheppard's complaint fails because she has failed to state any claims upon which relief can be granted. (*Id.*) Sheppard responded to defendants' motion to dismiss by filing a motion for summary judgment pursuant to Fed. R. Civ. P. 56.[3]

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6): Dismissal for Failure to State a Claim

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a complaint to provide the defendant with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. "[W]here the well-

---

[3] Defendants filed a reply to their motion to dismiss (Doc. No. 19) and a brief opposing Sheppard's motion for summary judgment (Doc. No. 20). It appears that Sheppard filed her second motion for summary judgment (Doc. No. 21) in response to defendants' opposition to her first motion for summary judgment. Defendants filed an opposition brief to Sheppard's second motion for summary judgment was well. (Doc. No. 22.)

4

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2) (second alteration in original)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *see Gregory v. Shelby Cty.*, 220 F.3d 433, 446 (6th Cir. 2000) (finding courts should not accept conclusions of law or unwarranted inferences couched in the form of factual allegations). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations marks omitted), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

Although pleadings and documents filed by pro se litigants are generally "liberally construed" and held to less stringent standards than formal pleadings drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam), even a pro se complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face in order to avoid a dismissal. *Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011).

## B. Rule 12(b)(1): Dismissal for Lack of Subject-Matter Jurisdiction

A defendant may also move for the dismissal of a claims for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). When a defendant moves to dismiss a claim for lack of jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

## C. Rule 56: Motion for Summary Judgment

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating that there is an absence of a genuine issue of material fact and that she is entitled to judgment as a matter of law. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party bears the burden of demonstrating a triable issue for trial. *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)

In reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Id*. at 252.

## III. DISCUSSION

In her complaint, Sheppard alleges claims against the defendants for: (1) trademark infringement, (2) discrimination under Title VII, (3) discrimination under the ADEA, and (4) discrimination under Ohio's antidiscrimination statute. (Compl. at 14–16.) In their motion to dismiss, defendants claim that this Court lacks subject-matter jurisdiction over Sheppard's trademark infringement, ADEA, and state-law discrimination claims on the basis of sovereign immunity, and lacks jurisdiction over Sheppard's Title VII and ADEA claims because Sheppard has failed to exhaust administrative remedies. (MTD at 127.) Defendants also contend that Sheppard's claims under Title VII, the ADEA, and Ohio's antidiscrimination statute are all barred by the applicable statute of limitations. (*Id.*) Further, defendants contend that Sheppard's complaint fails because she has failed to state any claims upon which relief can be granted. (*Id.*)

### A. ADEA and state-law discrimination claims

In their motion to dismiss, defendants contend Sheppard's claims for discrimination under the ADEA, and discrimination under Ohio's antidiscrimination statute must be dismissed because sovereign immunity usurps this Court of subject-matter jurisdiction. (MTD at 132.)

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S.

Const. amend. XI. The Eleventh Amendment has been interpreted to grant states broad immunity from federal suits. It "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (citing *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)). Thus, sovereign immunity generally bars suits for money damages against state universities, as well as state university officials acting in their official capacities. *See McCormick*, 693 F.3d at 661–62; *Nair v. Columbus State Cmty. Coll.*, No. 2:02-cv-595, 2008 WL 483333, at *9–10 (S.D. Ohio Feb. 19, 2008).

There are only three basic exceptions to sovereign immunity: (1) a state may waive its sovereign immunity by consenting to be sued in federal court; (2) Congress may abrogate sovereign immunity in the exercise of its power to enforce the Fourteenth Amendment; and (3) sovereign immunity does not bar suits against state officials seeking only prospective injunctive relief to compel the officials to comply with federal law. *See McCormick*, 693 F.3d at 662 ("[T]he Eleventh Amendment does not preclude a suit against [state university officials] for prospective injunctive relief."); *Nair*, 2008 WL 483333, at *9 (recognizing all three exceptions to sovereign immunity).

Here, sovereign immunity bars Sheppard's ADEA and state-law discrimination claims against UA and UA officials. Sovereign immunity has not been abrogated by Congress or waived by the State of Ohio. *See, e.g.*, *McCormick*, 693 F.3d at 664 ("Congress has not abrogated the Eleventh Amendment for state law claims, nor has Ohio waived its sovereign immunity." (citation omitted)); *Latham v. Office of Att'y Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005) (noting the ADEA did not validly abrogate the states' Eleventh Amendment immunity from suits by

8

private individuals, and Ohio did not consent to be sued in federal court under the ADEA); *Ky. Mist Moonshine, Inc. v. Univ. of Ky.*, 192 F. Supp. 3d 772, 780 (E.D. Ky., 2016) ("Congress has not abrogated immunity for intellectual property claims, including trademark claims, brought under the Lanham Act and subsequent amendments."); *see also Nair*, 2008 WL 483333, at *10 ("Ohio's anti-discrimination statute . . . does not waive federal court immunity, as that statute simply authorizes a suit against the state as an employer in state court.") Further, the third exception to sovereign immunity does not apply, as Sheppard does not seek prospective injunctive relief to compel UA officials to comply with federal law: she seeks only monetary relief. (Compl. at 17.)

Sheppard has not made cogent or valid arguments in her motions for summary judgment demonstrating that sovereign immunity does not apply to bar ADEA and state-law discrimination claims, much less that she is entitled to summary judgment as a matter of law on such claims or that there are no genuine issues of material fact. As such, the Court finds plaintiff's ADEA and state-law discrimination claims barred and properly dismissed on the basis of sovereign immunity.[4]

**B. Trademark Claim**

On April 9, 2019, almost seven months after filing her complaint, and after Sheppard filed her two motions for summary judgment, Sheppard—for the first time—asked for injunctive relief against defendants for the use of her trademark "The Black Male Summit." (Doc. No. 23.) Nevertheless, defendants contend in their motion to dismiss that plaintiff's trademark claim must be dismissed because plaintiff has failed to state a claim upon which relief can be granted. (Mot.

---

[4] Because this Court finds Sheppard's claims are properly dismissed on the basis of sovereign immunity, the Court need not consider defendants' alternative arguments for dismissal of these claims: failure to exhaust administrative remedies (ADEA) and statute of limitations (ADEA and state-law discrimination).

at 140.)

"To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. V. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996); *see also Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 572 (6th Cir. 2001) ("Ownership rights flow only from prior use[.]"). Thus, "[f]ederal registration of a trademark or service mark cannot create rights and priority over others who have previously used the mark in commerce[.]" *Allard*, 249 F. 3d at 572. Instead, "[t]he territorial rights of a holder of a federally registered trademark are always subject to any superior common law rights acquired by another party through actual use[.]" *Id.*

Here, Sheppard has provided her registration of the "Black Male Summit" with the United States Patent and Trademark Office (Doc. No. 8-26) and the Ohio Secretary of State (Doc. No. 8-23). However—as Sheppard admits—UA has been using "Black Male Summit" continuously since at least 2008. (Compl. at 5–6, 9; *see also* Doc. No. 23 at 197 ("[O]n April 12, 2019, for the twelfth time, [UA] again is poised to present the "Black Male Summit[.]").) Further, both registrations that Sheppard provides were not filed until 2018 and Sheppard does not allege any prior use of the name before her registrations.[5] Sheppard's belated registrations cannot trump the

---

[5] Sheppard contends that in 2004 she told a UA official that she had an idea for a program and "would call it, "The Black Male Summit[.]" (Compl. at 5, 7.) However, expressing an idea is not the same as using a trademark. Besides the 2018 registrations, Sheppard has not pleaded any facts to suggest that she can establish that she is the senior *user*

continued use by UA and Sheppard has provided this Court with no other reasons to believe she is the senior user of the name. As such, Sheppard has failed to state a trademark claim upon which relief can be granted and her trademark claim must be dismissed.[6]

### C. Title VII Claim

Having found plaintiff's trademark infringement, ADEA, and state-law discrimination claims barred and dismissed on the basis of sovereign immunity, the Court will consider plaintiff's sole remaining claim, which is made under Title VII.

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). In a failure-to-hire case, a plaintiff must make out a prima facie case by showing that: (1) she is a member of a protected class, (2) she applied for and did not receive the job at issue, (3) she was qualified for the job, and (4) similarly situated persons outside of her protected class received the job for which she applied. *Overall v. RadioShack Corp.*, 202 F. App'x 865, 868 (6th Cir. 2006). Additionally, the plaintiff must show that "the defendant continued to accept applicants for the position from equally qualified persons." *Id.* Only if the plaintiff satisfies these criteria does the burden shift to the defendant in a Title VII case.

Here, Sheppard has not alleged facts in her complaint, or in her motions for summary judgment, sufficient to demonstrate a prima facie case. She contends "she consistently met with

---

of "Black Male Summit."

[6] Accordingly, Sheppard's motion for injunctive relief is DENIED. (Doc. No. 23.)

and/or spoke with high ranking officials" at UA about "her idea" for a Black Male Summit. (MSJ at 155.) But Sheppard does not allege facts suggesting she actually applied for any job at UA that she was qualified to hold, or for which UA was actually seeking applicants. And although she contends there was a "reasonable possibility" of a job (*id.*), she does not allege facts suggesting she was rejected by UA in favor or any nonprotected person with similar qualifications. Sheppard simply states that UA has hired "Caucasian students who graduated with [her]" in "high ranking positions" in other contexts. (*Id.* at 157). Sheppard's allegations are insufficient to satisfy the required elements of a prima facie case for a Title VII failure-to-hire claim.

Further, defendants have also moved to dismiss Sheppard's Title VII because she has failed to exhaust her administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"). (MTD at 135–37.) A Title VII plaintiff cannot bring a claim in federal court that was not first raised in an administrative charge, and the defense of failure to exhaust may be resolved on a motion to dismiss. *See Weldon v. Warren Cty. Children Servs.*, No. 1:12–cv–279-HJW, 2012 WL 5511070, at *4 (S.D. Ohio Nov. 14, 2012) (citing cases). Sheppard has not responded to defendants' arguments regarded exhaustion. She does not contend in her complaint or motions for summary judgment that she has properly exhausted her administrative remedies with respect to her Title VII claim, with either the EEOC or the OCRC. Accordingly, her Title VII claim is properly dismissed pursuant to Rule 12(b)(6) for this reason as well.[7]

---

[7] Because this Court finds Sheppard's Title VII claim is properly dismissed under Rule 12(b)(6) for failure to state a claim and, alternatively, because Sheppard failed to exhaust the administrative remedies, this Court need not consider defendants' alternative argument for dismissal of the Title VII claim: statute of limitations.

## IV. CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss plaintiff's complaint (Doc. No. 10) is GRANTED, plaintiff's two motions for summary judgment (Doc Nos. 18, 21) are DENIED, and this action is dismissed. Any remaining motions are DENIED as moot. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: June 11, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**